# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| CHRISTA D. GRAHAM, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 7:07-CV-151-WLS-GMF |
| | : | 42 U.S.C. § 1983 |
| VANESSA FOLSOM, *et al.,* | : | |
| Defendants. | : | |

## REPORT & RECOMMENDATION

Before the court are the parties' Motions for Summary Judgement. Defendants Vanessa Folsom and Susan Harding filed a Motion for Summary Judgment on March 21, 2008. (R-58). The Plaintiff was notified of his right to respond, and did so on April 3, 2008. (R-64). Plaintiff thereafter filed a Motion for Summary Judgment on April 3, 2008. (R-66). Defendants Folsom and Harding filed their response on April 23, 2008 (R-72), and Defendant Russell Severns filed his response on May 14, 2008 (R-75). On the same date, Defendant Severns filed a Motion for Summary Judgment. (R-78). Plaintiff thereafter filed his response on June 10, 2008. (R-82). All Motions for Summary Judgment are now ripe for review.

**I.  Standard for Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure, dealing with motions for summary judgment, provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R. .Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). Motions for summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails or refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law. Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in

> evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (emphasis added).

## II.     Plaintiff's Complaint

In his complaint, Plaintiff alleges that the Defendants failed to provide him with proper medical treatment while he was incarcerated in the Brooks County Jail. (R-2, p. 4). In his Second Amended Complaint, Plaintiff contends that Defendants' actions violated his constitutional rights by interfering with his prescribed medication, showing deliberate indifference to a serious medical need, and a wanton infliction of pain. (R-13, p. 5). Specifically, Plaintiff contends that Defendants failed to provide certain medications, namely, Coumadin® (a blood thinner) and Percocet® (a narcotic painkiller), which he alleges he was prescribed by another physician. *Id.* Plaintiff also contends that he was given aspirin and Tylenol® which caused rectal/intestinal bleeding, and further contends that he could die at any time if not given Coumadin® and Percocet®. *Id.* at 5. Plaintiff alleges that he has filed numerous grievances, but that they have been ignored by the Defendants. (R-6, p. 3). In

4

October 2007, Plaintiff was transferred from the Brooks County Jail to the Coastal State Prison and was thereafter transferred to the Wilcox State Prison where he is currently incarcerated. Plaintiff is seeking monetary damages as well as an order that he be given the specified medication. *Id.*

### III. Parties' Motions for Summary Judgment

#### A. Defendants Nurse Folsom and Doctor Harding

Defendants Folsom and Harding contend that the Plaintiff did not have a serious medical need, a necessary element in a claim of deliberate indifference. In their Brief, the Defendants contend that neither Plaintiff's "rectal bleeding," nor his claims that a failure to receive Coumadin® and Percocet® could result in his death, ever existed. (R-58, p. 9). Specifically, the Defendants cite to Plaintiff's medical records and affidavits submitted by Defendants Nurse Folsom and Dr. Harding who averred that the Plaintiff was not taking either Percocet® or Coumadin® upon admittance to the Brooks County Jail, nor did they see a need for those medications after medical examinations were performed on Plaintiff. (R-58, Exhibits 1-3).

#### B. Defendant Captain Severns

In his Motion for Summary Judgment, Defendant Captain Severns, the Warden of the Brooks County Jail, alleges that he is entitled to judgment as a matter of law as to Plaintiff's claims that he interfered with his right to receive prescribed medications. (R-78). Specifically, Defendant Severns contends: that he is entitled to Eleventh Amendment

Immunity as to any claims raised by Plaintiff; that Plaintiff has failed to establish that Defendant Severns interfered with Plaintiff's prescribed medication; and that Plaintiff failed to exhaust his available administrative remedies prior to filing this suit. *Id.*

## C.     Plaintiff Graham

Alternatively, in his Motion for Summary Judgment, Plaintiff contends that "the district court should find as a matter of law that the alleged actions of Defendants Harding, Folsom and Severns, and factual records, could support finding that the Plaintiff Christa D. Graham's rights has (sic) been violated." (R-66-1). Specifically, he contends that no genuine issues of material fact remain as to whether Defendant Harding violated his constitutional rights by failing to provide adequate medical care where he claims he has established that he had a serious medical need, and where he has established that Defendant Harding was deliberately indifferent to his needs in prescribing aspirin and Tylenol® knowing that he was allergic to these medications.[1] *Id.* at 7-10. He further contends that judgment as a matter of law in his favor is necessary where, following his request for the medications, he was told by Defendants Folsom and Harding that Defendant Warden Severns does not allow any narcotic medications to be administered at the Brooks County Jail and that Coumadin® costs too much money. *Id.* Plaintiff alleges further that Defendant Folsom wantonly inflicted unnecessary pain in denying him access to a doctor for treatment of his

---

[1] It should be noted that anyone allergic to Tylenol®, which is a brand named acetaminophen tablet manufactured by McNeil-PPC, Incorporated, would not be able to take Percocet®, which is a brand named prescription narcotic pain reliever containing acetaminophen and oxycodone, manufactured by Endo Pharmaceuticals. *See* www.drugs.com.

bleeding bowel. *Id.*

## IV. Analysis of the Motions for Summary Judgment

### A. Deliberate Indifference Standard

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 104-105, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251, (1976) rehearing denied 429 U.S. 1066, 97 S. Ct. 798, 50 L. Ed. 2d 785 (1977). However, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation. *Id.* at 106. In order to recover in this case, Plaintiff must establish that defendants were deliberately indifferent to his serious medical needs. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Prison officials or prison doctors cannot be held accountable "under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994). "An official's failure to alleviate a significant risk

that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as infliction of punishment." *Id*. at 848. "Thus, the official must have a subjectively sufficiently culpable state of mind." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal citations omitted). "Likewise, in addition to the subjective awareness of the relevant risk, *Estelle* requires that plaintiff show more than mere negligence to establish a violation of the Eighth Amendment. . . ." *McElligott*, 182 F.3d at 1255 (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). The medical care provided a prisoner is not required to be "perfect, the best obtainable, or even very good." *Brown v. Beck*, 481 F. Supp. 723, 726 (S.D.Ga. 1980). However, a "delay in treatment can, depending on the circumstances and the length of the delay, constitute deliberate indifference." *Hinson v. Edmond*, 192 F.3d 1342, 1348 (11th Cir. 1999) (citing *Lancaster v. Monroe County*, 116 F.3d 1419, 1425 (11th Cir. 1997); *Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994)).

The United States Supreme Court has held that to show an objectively serious deprivation, it is first necessary to demonstrate an objectively "serious medical need," one that, if left unattended, "pos[es] a substantial risk of serious harm." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). In the current case, therefore, the Plaintiff is first required to show that the conditions for which he claims he was previously prescribed and then denied Coumadin® and Percocet® at the Brooks County Jail were serious and that if left untreated, they were capable of causing serious harm.

The Eleventh Circuit has further held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970, 128 L.Ed.2d 811).

If a plaintiff is able to establish a serious medical need, he must then establish that a prison official acted with deliberate indifference to a serious medical need, by showing that the defendant had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; and that his conduct was more than mere negligence. *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004).

### B. Factual Findings

A review of all of the pleadings, as well as the exhibits attached to said pleadings, reveals that Plaintiff was first seen at the infirmary at the Brooks County Jail on December 26, 2006, wherein he stated in response to a question regarding current medications that he was currently taking or had taken Percocet® for leg pain, along with daily aspirin. (R-58-2, p. 1004). On January 1, 1007, Plaintiff filled out an Inmate Request Form requesting an informal grievance, complaining that he had requested medication for his legs, back and head

9

but was not provided any. *Id.* at 1006. The Request form states that Plaintiff was provided a Grievance form the next day. *Id.* On his inmate Admission Data/ History and Physical Form, completed on January 10, 2007, Plaintiff listed aspirin as the only medication he was currently taking. *Id.* at 1007. On January 23, 2007, Plaintiff complained of leg pain and blood in his stool. *Id.* at 1009. Then, on February 1, 2007, Plaintiff first requested a narcotic pain reliever, Percocet®, for pain in his legs, along with a prescription blood thinner, Coumadin®, "to prevent strokes and blood clots." *Id.* at 1006. Plaintiff contends in his Response to Defendants' Motion for Summary Judgment that he required certain medications following being shot in the leg and having "heart stent surgery." (R- 64). Although Plaintiff claimed he had been prescribed the medications by a Dr. Riscoff which he picked up at a Walgreens in West Palm Beach, Florida, Defendant Folsom stated in her affidavit that, upon investigation, she found those medications had never been prescribed to Plaintiff through any Walgreens pharmacy in the country and further found no Dr. Riscoff to be employed at the hospital where Plaintiff claimed he worked. (R-58-1).

Then, on February 6, 2007, Plaintiff filed an informal grievance after not being supplied Coumadin® and Percocet® to which Defendant Folsom responded that he had been provided aspirin but had not been prescribed any pain medication. (R-58-2, p. 1011). Plaintiff's medical records then show that he: complained of a headache and rectal bleeding on February 7, 2007; complained of bleeding and blackouts on February 16, 2007 but refused medical treatment; complained of continued rectal bleeding and passing out on February 27,

2007, but refused a sick call; and complained of leg pain from climbing onto top bunk on March 5, 2007, and was given a low bunk and prescribed Tylenol®. *Id.* at 1014- 1024. It should be noted that on his medical reports from February 7 and 14, 2007, Plaintiff reported that he was allergic to Percocet®, having previously reported no known drug allergies. *Id.* at 1015, 1018. Alternatively, on March 5, 2007, Plaintiff's medical report reflects that he reported no known drug allergies. *Id.* at 1023. Plaintiff was thereafter released from the Brooks County Jail on March 6, 2007. *Id.* at 1025.

On July 5, 2007, Plaintiff was arrested and again entered Brooks County Jail. (R-58-2, p. 1026). At that time, Plaintiff listed on his Intake Screening Form a history of Asthma as the only condition for which he had been treated, but noted a history of a "stint placement." *Id.* at 1030. Thereafter, on July 10, 2007, Plaintiff complained via a Medical Request form that he needed his blood thinner for his bypass heart surgery as well as pain pills. (R-58-2, p. 1031). It was noted at that time by Defendant Folsom that although Plaintiff reported a history of heart surgery, she attempted but was unable to contact the doctor listed by Plaintiff and he was again prescribed aspirin. *Id.* On August 4, 2008, Plaintiff requested a sick call claiming that since the substitution of aspirin and Tylenol®, he had been bleeding in his stomach. *Id.* at 1033. On August 14, 2007, Plaintiff signed a Refusal of Medical Treatment form stating that "I'll just take the aspirin; I'll take the Tylenol® at night." *Id.* at 1034. On September 5, 2007, Plaintiff refused his medication. *Id.* at 1043. Plaintiff finally gave consent for his stool to be examined on September 7, 2007,

wherein a hemocult was performed and no blood was found. *Id.* at 1042.

Thereafter, on October 5, 2007, Plaintiff was transferred to and arrived at Coastal State Prison. (R-68-2, p. 18). A hemocult was performed and came back positive for blood. *Id.* Plaintiff was prescribed Colase, Metamucil, a hemorrhoidal suppository, Percogesic, Zantac and an antifungal cream. *Id.* at 20. On November 19, 2007, Dr. Harrison at the Coastal State Prison prescribed Coumadin® for Plaintiff, which he continued to receive until he was transferred to Wilcox State Prison and thereafter. *Id.* at 24.

### C. Discussion

Legal precedent, as noted *supra*, dictates that the Plaintiff in the current case must be able to establish that his medical conditions were indeed a serious medical need. If he were able to establish that his version of the facts is accurate, Plaintiff would then have to prove that the Defendants had knowledge that a failure to treat the condition would cause harm, that they disregarded the risk, and that the failure to treat the condition was more than mere negligence. *See Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004).

With regard to his assertion that his heart condition, leg pain and rectal bleeding were serious medical needs to which the Defendants were deliberately indifferent, Defendants Folsom and Harding have submitted affidavits, and, as set out above, Plaintiff's medical records from his time at Brooks County Jail to support their position. Defendants Folsom and Harding assert that Plaintiff was not taking Coumadin® or Percocet® upon entry to Brooks County Jail on either occasion. (R-58-1,3). They further contend that Plaintiff did

not mention that he required Coumadin® and Percocet® until his February 1, 2007, sick call appointment. (R-58, p. 5). As is reflected in his medical records submitted by Defendants, following his request for the medications, which he claimed were originally prescribed by a Dr. Riscoff and picked up at a Walgreens in West Palm Beach, Florida, Defendant Folsom contacted Walgreens wherein she was informed that no prescription for either medication had ever been filled by any Walgreens pharmacy to Plaintiff.[2] (R-58-1).

Furthermore, although Plaintiff alleges that his bleeding was caused by the effects of taking Tylenol® and aspirin in combination (R- 13), Defendants Folsom and Harding assert, and his medical records reflect, that Plaintiff began to complain of rectal bleeding six months before he was even prescribed the medications to be taken simultaneously. *Id.*

In his response to Defendants' Motion for Summary Judgment (R-58) and in his own Motion for Summary Judgment (R-66), Plaintiff asserts that upon being transferred out of Brooks County Jail, the prison physician "thought that Inmate Graham needed Coumadin and narcotic pain killer and she prescribed it." (R-64, p. 2). Plaintiff asserts that because Dr. Harrison found he needed the medications, that his medical needs were indeed serious. *Id.*

To rebut Plaintiff's allegations, Defendants Folsom and Harding submitted affidavits from Dr. Harrison, the physician at Wilcox State Prison and Michael Smith, P.A., the physician's assistant at Coastal State Prison. (R-72-2,3). Specifically, Dr. Harrison, by sworn affidavit, testified that she did not prescribe Plaintiff any narcotic pain reliever and

---

[2]The Court makes no assumptions or findings as to whether Plaintiff was ever prescribed Percocet® or Coumadin® by any private physician prior to his entry at Brooks County Jail.

13

only prescribed Coumadin® because of Plaintiff's statement to her that he had a history of deep vein thrombosis. (R-72-2, p.2). A review of his medical records from Wilcox State Prison reveals that Plaintiff has not been prescribed any narcotic pain reliever while incarcerated there, but does show that he was prescribed Coumadin®. (R-68-2, p. 20). Furthermore, the affidavit submitted by P.A. Michael Smith reveals that the first of four hemocults he performed on Plaintiff's stool, the only one of which came back positive for microscopic amounts of blood, was due to hemorrhoids, constipation or reflux. (R-72-3, p. 2). P.A. Smith testified that he prescribed a stool softener, a fiber supplement, hemorrhoid medication, percogesic and Zantac to treat Plaintiff's conditions. *Id.* P.A. Smith further stated that he never prescribed Coumadin®, nor any narcotic pain reliever while Plaintiff was incarcerated at Coastal State Prison. *Id.* at 3.

Ultimately, the court finds that, based on the pleadings, affidavits and exhibits, the Plaintiff has failed to show that his heart condition, leg pain or his claims of rectal bleeding were serious medical needs. The Plaintiff has failed to provide any evidence, other than his own claims, that his heart condition, his claims of rectal bleeding, or other impairments warranted the medication he requested. As such, Plaintiff has failed to meet the first prong of the deliberate indifference standard as set out in *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Thus, it is not necessary to determine if the Defendants had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; or that their conduct was more than mere negligence. *See, Brown v. Johnson,* 387 F.3d 1344, 1351 (11th

Cir.2004). Because the Plaintiff has failed to establish that any genuine issues of material fact remain as to whether the Defendants were deliberately indifferent to Plaintiff's medical needs, his claims must fail.

As to Plaintiff's claims that Defendant Severns interfered with his right to receive prescribed medications, Defendant contends that he is entitled to Eleventh Amendment Immunity, that Plaintiff has failed to establish that he ever actually interfered with Plaintiff's prescribed medication and that Plaintiff failed to exhaust his available administrative remedies prior to filing this suit. (R-78).

To determine whether a defendant is immune from liability under the Eleventh Amendment, the Eleventh Circuit Court of Appeals has held that ". . . a defendant need not be labeled a "state officer" or "state official," but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State." *Manders v. Lee,* 338 F.3d 1304, 1308 -1309 (11th Cir. 2003); citing *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429-30, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997). The Court, in *Manders*, set out the four factor test used to ascertain whether an entity is an "arm of the State" in carrying out the function at issue: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders* at 1309; citing *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm.,* 226 F.3d 1226, 1231-34 (11th Cir.2000) (additional citations omitted).

The Eleventh Circuit Court of Appeals has held that county sheriffs are arms of the State of Georgia, not county officials. *Grech v. Clayton County*, 335 F.3d 1326, 1344-1348 (11th Cir. 2003). The Eleventh Circuit also acknowledged that Georgia Courts have concluded that sheriff's deputies are employees of the sheriff and not the county. *Id* at 1342; citing *Lowe v. Jones*, 231 Ga. App. 372, 373, 499 S.E.2d 348 (1998) (additional citations omitted). Defendant Captain Russell Severns is employed by the Brooks County Sheriff's Department and Warden of the Brooks County Jail. As both the Brooks County Sheriff and his Warden are officials of the State, they receive the protection of the Eleventh Amendment given to states and may not be sued for compensatory damages. Thus, Plaintiff's claims for compensatory damages against Defendant Captain Severns should be dismissed with prejudice.

With regard to his assertion that Plaintiff failed to exhaust the grievance procedure, Section 1997(e) of the Prison Litigation Reform Act (PLRA) provides that "no action may be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[W]hen a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the administrative remedies available under that procedure before pursuing a §1983 lawsuit." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000); *see Miller v. Tanner*, 196 F.3d 1190,

1193 (11th Cir. 1999) (providing general discussion of the Georgia Department of Corrections grievance procedure). Additionally, the Eleventh Circuit held in *Alexander v. Hawk*, that the exhaustion of the grievance procedure is mandatory. 159 F.3d 1321, 1325 (11th Cir. 1999).

The Georgia Jail Standards- Grievance Procedures, which regulates the grievance process in all Georgia jails, reveals that an inmate has five calendar days from the date he knew or should have known of the facts surrounding the grievance to file a grievance. (R-79-2). After a decision is rendered regarding the grievance, the inmate has four days to accept the findings or file an appeal with the Jail Operations Administrator. *Id.* For an inmate to fully exhaust his administrative remedies, therefore, he must complete all steps of the grievance procedure.

In reviewing the pleadings in this matter, it appears that although Plaintiff has submitted the grievance he filed with regard to his complaint, he has presented no evidence to show that he ever appealed the decision. As such, Plaintiff did not exhaust his available administrative remedies before filing the current action. Therefore, this Court again recommends that Defendant Severns' Motion for Summary Judgment be granted as no genuine issue of material fact exists where Plaintiff failed to exhaust the grievance procedure as mandated by the PLRA.

Defendant makes further assertions as to why his Motion for Summary Judgment should be granted. Those issues, however, need not be addressed as the court is not required to review the merits of the Plaintiff's claims. Therefore, Defendant Severn's remaining

assertions are deemed moot.

## V.   Conclusion

To preclude summary judgment once the moving party has provided evidence failing to show that any issues of fact remain, the non-moving party must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder. *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). As stated above, genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which should be submitted to the trier of fact for final determination. All parties have filed Motions for Summary Judgment in this case. Having submitted sworn statements and provided credible evidence, each of the Defendants, in their role as the moving party, have met their burden of proof. That is, they have demonstrated to the court the basis for their motions, establishing that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he merely made allegations of misconduct, without supporting his contentions. All of the evidence in this case was examined in a light more favorable to the non-moving party as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). The Defendants, however, have shown that no material fact upon which relief may be granted still exists, therefore, it is recommended that Defendants' Motions for Summary

Judgment be **GRANTED** and, further, that Plaintiff's Motion for Summary Judgment be **DENIED.**

**ACCORDINGLY**, because it appears that Defendants Folsom, Harding and Severns are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Motions for Summary Judgment filed by them be **GRANTED** and that Plaintiff's Motion for Summary Judgment be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of June, 2008.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

eSw